STERLING REALTY CO., PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6333.   Promulgated October 25, 1927.

The March 1, 1913, fair market value of real estate determined.

*J. S. Finlayson*, Esq., and *Paul D. Rogers*, Esq., for the petitioner.
*L. C. Mitchell*, Esq., for the respondent.

This is an appeal from the determination of deficiencies in income and excess-profits taxes for the years 1919 and 1920 in the sum of $15,617.77, which arose from the refusal of the Commissioner to accept the March, 1913, valuation as returned by the petitioner upon certain real property sold in 1919 and 1920.

FINDINGS OF FACT.

The petitioner is a Nebraska corporation with its principal office in the City of Omaha, and was formed for the purpose of holding certain vacant real estate in the City of Omaha, known as the E. Kountz Reserve, previously owned by the heirs of Mrs. Elizabeth Kountz. This property, so held by the petitioner, extended about three city blocks east and west, from 17th to 20th Streets, and two blocks north and south from Harney Street to St. Mary's Avenue, and was part of the so-called St. Mary's Avenue District. In 1919, the petitioner sold for a total consideration of $182,500, the following lots in the E. Kountz Reserve: Lots 1, 2, 8, 9, 17, 18, 24, 26, 27, 28, 29, 49, 50, 51, and 52 in Block 3, the East 75 feet of Lots 1, 2, and 3 in Block 2, and Lot 6 in Block 1. In 1920, the corporation sold for a total consideration of $72,500, Lots 10 and 16 in Block 3, and Lot 6 in Block 2. The petitioner estimated the March 1, 1913, fair market value of the lots sold in 1919, at $160,000, and in its income-tax return for that year reported a profit of $22,500. For the lots sold in 1920, the petitioner estimated the March 1, 1913, fair market value to be $62,500, and reported a profit for 1920 of $10,000. The Commissioner refused to accept the valuation of the petitioner and fixed the March 1, 1913, value of the lots sold in 1919 at $114,062.50 and of the lots sold in 1920 at $41,428.60.

Although the E. Kountz Reserve was located but a short distance from the business center of Omaha, the property had remained in a dormant and inactive state for some years prior to and after March 1, 1913, due to the fact that the streets and sidewalks were badly paved and that near 17th Street and St. Mary's Avenue, due to the grades, a pocket had been formed which was flooded by each heavy rain. There was in addition an obstruction in the neighborhood of 17th and Howard Streets, which had caused this part to be shunned

by traffic and had hindered the development of the whole district. These conditions had been in existence for many years and although there had been frequent agitation for improvements, none were undertaken until about 1917, when an improvement district was created by the City Council of Omaha; the project failed at this time and a new improvement district was created in November or December, 1920; the actual work, however, was not begun until 1921 and finished in 1922, at which time the streets were repaved and widened, the grades reduced to some extent and the drainage corrected, thus eliminating the former flood condition of this district.

The period just after the termination of the World War in 1919 and 1920 was one of great activity and business expansion in Omaha. There was a business boom with a consequent advancement of prices, but due to the peculiar condition of the St. Mary's Avenue District and its physical disadvantages the general increase in values affected it but slightly, if at all. There were no sales in the district during the year 1913, the nearest in point of time being that of a lot at 19th and Harney Streets, on which the Omaha Grain Exchange later constructed a building. This lot was bought in 1912 at a price of about $38,000 and sold in 1914 for $55,000. This particular property adjoined lots 1, 2, 24, and 25 in Block 3, sold by the petitioner in 1919, and its value as vacant property was approximately the same as a like number of feet of petitioner's lots. The 1914 transaction was considered by petitioner's experts in arriving at their opinions of March 1, 1913, values. Practically no sales were made in this district until the sales here in question and none have been made since, except that one lot, No. 42, sold in 1917 for $6,500, was resold in 1921 or 1922 for $15,500.

The county tax assessments during this period were made in 1912, 1916, and 1920, and show an increase in assessed real estate values for the district of approximately 175 per cent from 1912 to 1920. However, there was no such increase in market value.

#### OPINION.

MURDOCK: No testimony was introduced as to the date of acquisition or the original cost of these properties to the petitioner and both parties concede that the only issue in this case is the March 1, 1913, value of the lots sold by the petitioner in 1919 and 1920. In order to prove such value the petitioner has relied upon the testimony of a number of real estate experts whose total valuations for the lots sold in the above years varied from $179,270 to $218,650. It has also introduced the testimony of two abstracters of title, who have arrived at their values by an analytical method, based upon a single sale in 1914, but who have disregarded a sale of the same piece of property in 1912.

The Commissioner based his determination upon a report of revenue agents who had examined the property and the tax assessments for various years from 1912 to 1920, and who had interviewed certain real estate agents of the city. We do not know who these real estate agents were except that it appears that two were witnesses called by the petitioner. The respondent contends that the values claimed by the petitioner are erroneous for the reason that the years 1919 and 1920, when the lots in question were sold, were boom years and a period of great expansion and business activity, resulting in greatly increased prices. He bases this contention upon the testimony of the petitioner's witnesses on cross-examination, upon various statistics introduced in evidence as to the growth of population and industries in the City of Omaha at that period, and upon the fact that a great many buildings were erected in districts nearby from 1917 to 1920. He reasons that sale prices in 1919 and 1920 therefore represented a large percentage of increase over the values as of March 1, 1913. However, a careful reading of the testimony of the petitioner's witnesses will disclose the fact that they have stated as their opinion that such advance in prices did not affect the district in question, due to its peculiar situation and physical disadvantages, and that this was not remedied until certain improvements were carried out in 1921.

The respondent further contends that the years 1919 and 1920 represented the peak of a rise in values for the district. In support of this he points to the fact that almost all of the petitioner's sales were made during those years and he seeks to show that the improvements about to be made in the district caused an increase in value before these improvements were in fact carried out. However, the fact that the majority of sales were made in the two years in question does not necessarily establish that period as one of higher prices without further testimony, and, standing alone, it merely raises an inference which we are not inclined to adopt. As to the effect of contemplated improvements, the testimony of the real estate dealers called by the petitioner shows that the proposed changes were not anticipated and caused no perceptible increase in values before they were actually undertaken.

Furthermore, it appears that the property owners themselves were opposed to the contemplated changes due to their fear that the cost of the improvements might outweigh any increase in values which would result. Where such uncertainty existed as to the effects of proposed improvements, it is reasonable to suppose that no great rise in values would occur until the improvements were more definite and their cost settled.

Thus, in arriving at the values in dispute, we must decide between positive testimony introduced by the petitioner and the contention

of the respondent that such values must have been considerably lower than the selling prices for the reasons above set forth.  Under such circumstances we have based our determination upon the valuations as set forth in the testimony introduced by the petitioner, since we are of the opinion that the uncontradicted testimony of a number of real estate experts familiar with the properties and values as of March 1, 1913, furnishes a better basis than an arbitrary percentage of increase founded upon a general rise in prices which may or may not have affected the district in question.  Consequently, we hold that the March 1, 1913, fair market value of the lots sold in 1919 amounted to $145,000 and that of the lots sold in 1920 amounted to $45,000.

> *Judgment will be entered upon notice of 15 days, under Rule 50.*

Considered by TRAMMELL, MORRIS, and SIEFKIN.